# Beil *v.* Bonneville Portland Cement Company, Appellant.

*Negligence—Master and servant—Cement mill—Dangerous locality—Contributory negligence—Question for jury.*

In an action by a carpenter and millwright against his employer, a corporation operating a cement mill, to recover damages for personal injuries, it appeared that the plaintiff was directed by the assistant superintendent of the defendant, to examine some machinery in the mill that had become clogged. To make the examination he had to lie down on his stomach and turn his head. As he was thus lying his feet were extended in the direction of an unprotected running chain and sprocket, and one of his feet was caught in the chain and mangled. There was evidence that the mill was dark, that it was customary in other mills to guard the chain and sprocket, and that although the plaintiff knew that the mill had stopped, he was not aware that the chain was running. *Held,* that defendant's negligence and plaintiff's contributory negligence were for the jury, and that a verdict and judgment for plaintiff should be sustained.

Argued March 12, 1907. Appeal, No. 371, Jan. T., 1906, by defendant, from judgment of C. P. Northampton Co., Sept. T., 1905, No. 80, on verdict for plaintiff in case of Henry Beil v. The Bonneville Portland Cement Company. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before SCOTT, J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $2,500. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*Edward J. Fox*, with him *James W. Fox*, for appellant.

*Fred B. Gernerd*, with him *George W. Geiser*, for appellee.

OPINION BY MR. JUSTICE BROWN, June 3, 1907:

The plaintiff below, a carpenter and millwright, had been in the employ of the defendant company for about four months prior to April 10, 1905, the date of the injuries sustained by him. On the morning of that day he was directed by the assistant superintendent to go to a grinding mill, known as a Kent mill, for the purpose of repairing it. At noon it was supposed the difficulty with the mill had been overcome, but in the afternoon he was again directed to go to it, as it was clogged and not in working order. It was situated near the middle of the building and had attached to it a conveyor, which conveyed the ground clinker to a separator, where the finely ground cement was separated from that which was too coarse for use, the coarse portions being conveyed back to the mill and ground over. The conveyor was operated by a chain and sprocket which ran near the Kent mill, at a distance of about four feet from it. The space between the sprocket wheel and the floor was about two inches. The assistant superintendent went with the plaintiff to the mill and asked him what was the matter with it. The plaintiff said he could not tell, and the assistant superintendent then asked him to try to locate the trouble. The appellee said they might be able to locate it by looking in from the bottom through a hand hole. He was told by the assistant superintendent to try to locate it in that way. The hand hole or opening in the bottom of the mill was oval in shape, about six inches long and three inches wide. To look into this hole the plaintiff was compelled to lie down on his stomach and turn his head. He had a lighted torch in his hand which he inserted in the hole,

and as he was thus lying, his feet extending in the direction of the running chain and sprocket, which were unprotected, one of them was caught in the chain and mangled.

On the question of the appellant's negligence in assigning the plaintiff to work in a place that was not reasonably safe, the court submitted to the jury's consideration the darkness of the mill, the danger to the employees from the unguarded and unprotected chain and sprocket and the failure of the assistant superintendent, who was present when the accident occurred, to stop them before directing the plaintiff to locate the trouble in the mill. The darkness of the room was fairly for the jury's consideration in view of the close proximity of the chain and sprocket to the place where the employee was directed to examine the mill, for the danger of coming in contact with them was greater in darkness than in light. The testimony of an expert witness called by the plaintiff was that, though chain and sprocket wheel were appliances in ordinary use in cement plants throughout the country, they were very dangerous if not protected or covered, and he did not know of any in general use that were not protected, if they were within reach of the workmen. No attempt was made to contradict this. Within reach of these unprotected appliances, not stopped by the assistant superintendent, though he could readily have stopped them, the plaintiff was directed by him, his superior, to locate the cause of the trouble in the mill. In view of this the question of the defendant's negligence was clearly for the jury, for impartial, fair-minded, reasonable and capable men could fairly conclude that the company had not exercised proper care under the circumstances.

It is urged, however, that even if the negligence of the defendant was a question for the jury, that of the plaintiff, contributing to his injuries, was so clear that the court ought to have instructed the jury he could not recover. It may be conceded he was acquainted with the general situation. He had not helped to put up the chain and sprocket, but knew they were there. His work was that of carpenter and millwright, and not that of a machinist. If it affirmatively appeared that he knew the chain and sprocket were running, unguarded and uncovered, at the time he was directed to look for the trouble in the mill, there would be much force in the

contention of appellant's counsel that his own carelessness in putting his foot in contact with them was responsible for his injuries.   He testified that when he was directed to go to work and lie down on the floor he did not see the chain and sprocket, and could not tell whether they were running or not.   The mill was not running, and why, as a matter of law, ought he to be held to have had knowledge that the chain and sprocket had not also stopped ?   His superior knew they were running, uncovered and unprotected.   With such knowledge he directed his subordinate to work in the immediate presence of their danger, and in obeying this direction, with no affirmative proof that the employee knew he was in peril, his conduct cannot be declared by the court, as a matter of law, to have been negligence.   Whether it was, was also for the jury, and, in a charge admitted by counsel for appellant to be free from error, if the case was for them, the question of the plaintiff's contributory negligence was submitted under instructions that would have resulted in a verdict for the defendant if, under the evidence, there could fairly and properly have been a finding that the plaintiff had been negligent.

The single assignment of error, complaining of the refusal of the court to direct a verdict for the defendant, is overruled and the judgment affirmed.